Filed 9/3/24  P. v. Mosqueda CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082764 |
| v. | (Super.Ct.No. SCR46696) |
| ADRIAN MOSQUEDA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Gregory S. Tavill, Judge.  Dismissed.

Daniel J. Kessler, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant Adrian Mosqueda appeals from the trial court's denial, after an evidentiary hearing, of his petition for resentencing under Penal Code

1

section 1172.6.[1]  Defendant's counsel on appeal filed a brief contending that because there was an evidentiary hearing below, the review procedures outlined in *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*) apply, rather than those set forth in *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*) for review of denial of postconviction relief under section 1172.6.  As we briefly explain, *Delgadillo* resolves counsel's claim.  Defendant filed no supplemental brief.  We therefore dismiss the appeal.

PROCEDURAL AND FACTUAL BACKGROUND

An information filed in February 1988 charged defendant with three offenses: (1) murder (§ 187, subd. (a)) for the slaying of Rodolfo Vasquez Arroyo; (2) attempted robbery (§§ 664, 211); and (3) robbery (§ 211).  Each count included allegations that defendant personally used a firearm to commit the crimes.  (§§ 1203.06, subd. (a)(1) & 12022.5.)

On December 28, 1988, a jury convicted defendant on all three counts, found the murder was in the first degree, and the firearm enhancements true.  On January 25, 1989, the trial court sentenced defendant to 32 years to life in prison.

In August 2022, defendant filed his resentencing petition.  Among other statements in his form petition, he averred that he "could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019."  The prosecutor opposed resentencing.  Nonetheless, based on the fact that the

---

[1]  All further undesignated statutory references are to the Penal Code.

2

murder liability theories on which the jury was instructed included felony murder, the prosecutor conceded defendant made a prima facie case under section 1172.6 to require an evidentiary hearing.

The trial court appointed counsel for defendant and set a hearing to determine defendant's eligibility for resentencing. Defendant testified at the hearing, as did his expert witness. In pertinent part, defendant implicated his cousin, Edward Flores, as having committed the murder. Stating that Flores was "way bigger [physically] than me," defendant suggested Flores better matched a photograph of the alleged perpetrator shown to an eyewitness at defendant's trial.

Defendant also testified that "as soon as [Flores] died," defendant attempted to contact the detective who investigated Arroyo's homicide "to show him where he made his mistakes at." Defendant claimed that, to no avail, he "wanted to point [the detective] in the right direction that he mistak[en]ly aimed at me when it should have been aimed at my cousin." The date Flores died is not in the appellate record, but appears by the timing of defendant's resentencing petition to have been decades after defendant was convicted. Defendant testified he remained silent for so long because "where I grew up at, you learn very young that you don't see nothing, you hear nothing, you say nothing."

Defendant's expert in gang culture similarly testified to a no-snitching rule in communities dominated by gangs. According to the expert, after a period of time, usually 15 years, gangs ordinarily permit disclosing who actually committed the crime.

The trial court reviewed the record of defendant's trial, including the transcripts. The court also requested and considered post-hearing bench briefs and then heard further argument by the parties.

The court denied defendant's petition. The court determined the evidence presented at defendant's trial showed beyond a reasonable doubt that he was "one of the shooters that pursued the victim and shot at" him and, on that basis, defendant was guilty of murder under current law. This included as a direct aider and abettor under section 189, subdivision (e)(2), or as a major participant in the crime who acted with reckless indifference to life under section 189, subdivision (e)(3). The court made its latter finding regarding reckless indifference "mindful of *Banks* and *Clark*." (See *People v. Clark* (2016) 63 Cal.4th 522; *People v. Banks* (2015) 61 Cal.4th 788.)

The court referenced "other circumstantial, corroborating evidence connecting the crime to [defendant]." This included "ballistics testimony in the trial about the unspent bullets at [defendant's] house matching the bullets at the scene." Additional "connections" included the eyewitness "who ID'd Mr. Mosqueda three times: [i]n the photo lineup and the live lineup at the jail . . . and he identified him in front of the jury, and the jury believed him."

The court did not find defendant's testimony denying involvement credible. In the court's view, defendant's new claim decades after the fact amounted to "'conveniently blam[ing] a dead man, someone who will neither contest the allegations nor suffer

punishment as a result of them.'"  (Quoting *Herrera v. Collins* (1993) 506 U.S. 390, 422

(conc. opn. of O'Connor, J.).)

On credibility, the court noted that defendant told a detective the morning after the

murder that he "'was fucked up and didn't remember'" where he was the previous night.

Now defendant's claim was, "'I wasn't there, I didn't do it.'"  The court pointed out that

the change in his account not only undermined defendant's credibility but, further, his

new positive recall that he was not at the murder scene "would not" have "violate[d] the

gang code" even at the time of the earlier investigation.  The court acknowledged, "If you

point[ed] somebody else out, then yeah, you're right.  You might have a problem.  But if

you didn't do it, there's nothing in the gang code that says you have to take responsibility

and say that you did.  And you didn't say you didn't do it, you said 'I didn't remember,'

which is inconsistent with those ideas."

After the trial court denied resentencing, defendant appealed and this court

appointed counsel.

Appellate counsel filed a brief stating his review of the record uncovered no

arguably meritorious appellate issues, including after consultation with Appellate

Defenders, Inc.  The brief set forth a statement of the case, an extended statement of

facts, and requested that we independently review the record on defendant's behalf to

identify potential grounds for reversal, if any.  Counsel requested the review under *Wende*

and *Anders*, eschewing *Delgadillo*.  Counsel listed as an issue for our potential

5

independent consideration: whether sufficient evidence supported the trial court's direct aider/abettor and major participant/reckless indifference findings.

DISCUSSION

Generally in appeals from denial of postconviction relief, including denial of a petition for resentencing under section 1172.6, independent appellate court review under *Wende* and *Anders* is not required when counsel files a no-issue brief. (*Delgadillo*, *supra*, 14 Cal.5th at pp. 224-226.) The appellate court may undertake independent review in its discretion, but need not do so. (*Id.* at pp. 230-232.) If the defendant does not file a supplemental brief, the appellate court "may dismiss the appeal as abandoned." (*Id.* at p. 232.) Defendant did not respond to our notice he could file a supplemental brief or that dismissal might follow without one.

Appellate counsel contends that because *Delgadillo* was an appeal from the denial of a section 1172.6 petition at the prima facie stage, *Wende* and *Anders* procedures still apply to cases, like this one, in which the court denied the petition after an evidentiary hearing. We disagree.

There are multiple steps in appellate counsel's argument but, in the end, his contention relies on the fact that independent review under *Wende* and *Anders* is founded on ensuring the right to assistance of counsel mandated by the Constitution. (See *Delgadillo*, *supra*, 14 Cal.5th at pp. 225-226.) *Delgadillo* noted that after an unsuccessful direct appeal following a defendant's conviction, "the procedures set out in *Anders* and *Wende* do not apply to an appeal from the denial of postconviction relief, even if the

6

defendant has a state-created right to the appointment of counsel for that appeal." (*Delgadillo*, at p. 226.)

Appellate counsel therefore attempts to upgrade defendant's statutory right to counsel under section 1172.6, subdivision (b), to one of constitutional dimension. Counsel does so by analogizing to habeas corpus and *coram nobis* proceedings. (See *Delgadillo*, *supra*, 14 Cal.5th at p. 228 [considering this argument]; see also *People v. Shipman* (1965) 62 Cal.2d 226, 231-233 [defendant may have a constitutional right to counsel in *coram nobis* proceedings]; see also *In re Clark* (1993) 5 Cal.4th 750, 780 [extending *Shipman* to habeas proceedings].) *Delgadillo* dismissed the analogy in the context of section 1172.6 proceedings, stating: "Our *Shipman* precedents have never extended the right to counsel to an appeal from a ruling in an ameliorative legislative scheme." (*Delgadillo*, at p. 228.) As *Delgadillo* also noted, "After the first appeal as a right, 'the Constitution does not put the State to the difficult choice between affording no counsel whatsoever or following the strict procedural guidelines annunciated in *Anders*.'" (*Delgadillo*, at p. 226, quoting *Pennsylvania v. Finley* (1987) 481 U.S. 551, 559.)

Moreover, *Delgadillo* broadly rejected the notion that considerations of due process mandate *Wende*-type independent review in appeals from denial of a section 1172.6 resentencing petition. *Delgadillo* summarized the constitutional due process question as: "Ultimately '. . . whether the absence of the *Anders/Wende* procedures significantly increases the risk of erroneous resolutions.'" (*Delgadillo*, *supra*, 14 Cal.5th at p. 229.) The court examined the question in light of "the elaborate

7

protections already in place" under section 1172.6, including at the trial court level "the appointment of counsel, a review of the record, briefing, and a hearing" and, in *Delgadillo* as here, appointment of appellate counsel. (*Delgadillo*, at p. 230.) The high court concluded, "[O]nce appointed counsel here concluded there are no arguable issues, 'the value of applying the procedures required by our decision in *Wende* in criminal appeals is "too slight to compel their invocation."'" (*Ibid.*)

The same is true here, hence no *Wende/Anders* review is required. We also see no reason to undertake discretionary independent review of the trial court's denial of defendant's resentencing petition.

DISPOSITION

The appeal is dismissed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

RAPHAEL
J.

MENETREZ
J.